## Laura Jaser *v.* George Jaser
## (11838)

Landau, Heiman and Spear, Js.

Argued October 31, 1994—decision released March 14, 1995

*Adele V. Patterson* and *Elaine S. Amendola,* for the appellant (plaintiff).

*William F. Gallagher,* with whom, on the brief, were *Cynthia C. Bott* and *Barbara L. Cox,* for the appellee (defendant).

*Mark R. Soboslai,* for the minor children.

Landau, J. In this appeal from a judgment of dissolution of marriage and a modification of that judgment,

the plaintiff claims that the trial court improperly (1) entered financial orders in its judgment of dissolution of marriage that were not supported by the evidence, and (2) modified its previous orders in regard to child support and lump sum alimony. She asserts that the trial court failed to accord lis pendens their legal effect, which resulted in original financial orders that were not supported by the evidence and were inequitable. She also argues that, as to the modification, the trial court failed to address the threshold issue in that it failed to find a substantial change in circumstances. See General Statutes § 46b-86; *Emerick* v. *Emerick*, 28 Conn. App. 794, 802, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992).

The plaintiff commenced her dissolution action against the defendant on January 26, 1988, seeking custody of their three minor children and financial relief. In a cross complaint, the defendant likewise sought a dissolution of the marriage and other relief, including custody. A trial was held in October, 1991, during which all issues were heard except, by agreement of counsel, custody and visitation. The trial court rendered judgment on February 5, 1992, in which it dissolved the parties' marriage and ordered, inter alia, (1) that the defendant pay child support in the amount of $346.63 per week, per child, and all medical and dental expenses, (2) that the plaintiff receive the family residence, (3) that the defendant pay all encumbrances on the family residence and pay off the first and second mortgages within five years, (4) that the plaintiff receive a condominium located in Quebec, Canada, (5) that the defendant pay periodic alimony in the amount of $250 per week for ten years or until the plaintiff or the defendant dies or the plaintiff remarries, and (6) that the defendant pay lump sum alimony in the amount of $100,000, payable at the rate of $20,000 per year, beginning one week after the date of the judgment.

The defendant subsequently filed a motion entitled "motion for reargument, reconsideration and to set aside judgment." Following argument on that motion, the trial court modified its February 5, 1992 judgment by reducing the child support award, changing the method of paying the lump sum alimony and vacating the award of the Quebec condominium. This appeal from the judgment and the modified judgment followed.

In conjunction with this appeal, this court ordered counsel for the parties and for the minor children to brief and argue the following issues: (1) Is it plain error for the trial court to hear a motion that affects the amount of child support, without the participation of appointed counsel for the minor children, in light of the provisions of General Statutes § 46b-54[1] and the relevant case law? (2) Whether the Appellate Court may properly hear an appeal from the granting of a motion affecting child support without the participation of counsel for the minor children.[2]

---

[1] General Statutes § 46b-54 provides: "(a) The court may appoint counsel for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. The court may appoint counsel on its own motion, or at the request of either of the parties or of the legal guardian of any child or at the request of any child who is of sufficient age and capable of making an intelligent request.

"(b) Counsel for the child or children may also be appointed on the motion of the court or on the request of any person enumerated in subsection (a) of this section in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy, provided the court may make any order regarding a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any child.

"(c) Counsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child."

[2] In this appeal, the parties did not seek a decision as to the appropriateness of the nonparticipation of counsel for the minor children before the trial court, nor did they question the failure of counsel for the minor children to appear on appeal. Nonetheless, these issues warrant plain error

## I

We first address the issues that this court ordered the parties to address, to which the following facts are relevant. Attorney Mark Soboslai was appointed by the trial court as counsel for the minor children on December 7, 1988, in the midst of proceedings on motions for custody of the children and for exclusive possession of the family residence. The hearing was adjourned and rescheduled to allow Soboslai's participation and, when the proceedings were reconvened on January 4, 1989, Soboslai was present. At that time, the parties and Soboslai presented an agreement to the court that provided, inter alia: "The parties contemplate, Your Honor, meeting with Mr. Soboslai on matters concerning joint custody, residence and visitation, and contemplate after that meeting coming to the court for more extensive orders or structured visitation." The court entered orders in accordance with the agreement.

Subsequently, the court bifurcated the trial to separate issues of permanent custody from financial issues. The plaintiff asserts that the trial court did not request the participation of counsel for the minor children in the proceedings involving financial matters. Moreover, both parties and counsel maintain that there was a mutual agreement and understanding that Soboslai's participation would not be required at the trial of the financial issues. Soboslai maintains that this agreement was reached after he determined that the cost of his involvement in the dispute over the financial matters outweighed any benefit to the minor children.

review as they implicate interests of public welfare and fundamental justice between the parties. We note that the parties and counsel for the minor children were afforded the opportunity to brief and argue the issues. See Practice Book § 4185; *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 99, 644 A.2d 325 (1994).

"The court may appoint counsel for any minor child or children . . . if the court deems it to be in the best interests of the child or children. . . ." General Statutes § 46b-54 (a). "Counsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child." General Statutes § 46b-54 (c).

While "[i]t is not . . . mandatory that counsel be appointed in every situation"; *Nye* v. *Marcus,* 198 Conn. 138, 146, 502 A.2d 869 (1985); " '[g]enerally, appointment of counsel for minor children rests within the discretion of the trial court.' " Id. In this case, the court properly exercised its discretion pursuant to § 46b-54 (a) and appointed counsel for the minor children.[3]

---

[3] We understand and appreciate the reasons which might conflict with a rule mandating that minor children be represented at every stage of the proceedings in every matrimonial case. Matrimonial actions, although brought to a public arena because of the inability of persons to resolve their conflicts, are extraordinarily private in nature and should continue to be so viewed. "The law . . . ought to and generally does prefer the private ordering of interpersonal relationships over state intrusions on them." J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child (1973), p. 50.

The appointment of independent legal counsel for minor children may properly be regarded as further publicizing matrimonial proceedings. Additionally, the routine appointment of counsel for minor children may tax the resources of both the parties and the courts. Fees paid to counsel, either by the parties or taxpayers, might be better spent in the child's interests in other ways. We can foresee that, in certain instances, the habitual appointment of counsel for minor children will engender duplication of work.

"For the future, we suggest that, in the absence of strong countervailing considerations such as physical urgency or financial stringency, the better course is to appoint independant counsel whenever the issue of child custody is seriously contested. Landsman & Minow, 'Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising from Divorce,' 87 Yale L.J. 1126, 1129–34 (1978); [R.] Berdon, 'Child Custody Litigation: Some Relevant Considerations,' 53 Conn. B.J. 279, 286–88 (1979)." *Yontef* v. *Yontef,* 185 Conn. 275, 284, 440 A.2d 899 (1981).

Section 46b-54 vests discretion in the trial court to determine counsel's role in the proceedings. The plain language of § 46b-54 (c) permits counsel for the minor children to be heard on those "matters pertaining to the interests of any child . . . so long as the court deems such representation to be in the best interests of the child." See *Knock* v. *Knock*, 224 Conn. 776, 791, 621 A.2d 267 (1993). Section 46b-54 does not require the trial court to hear counsel on every issue regarding the minor children. Rather, the statute directs the trial court to hear counsel on those matters as to which the court deems that it is in the best interests of the child to do so. It follows as a corollary that because the trial court may appoint counsel for the minor child only when it deems representation is in the best interests of the child; see General Statutes § 46b-54 (a); and counsel *shall* be heard on *all* matters pertaining to the interests of the child as long as the court deems the representation to be in the best interests of the child; see General Statutes § 46b-54 (c); then the appointment of counsel is a general appointment unless and until the court limits the appointment.

In this case, it is apparent from the record that the trial court adopted the agreement of the parties that the appointment would be limited to "matters concerning joint custody, residence and visitation." There is no suggestion in the record that the trial court ordered Soboslai's participation in any other issues, including that of child support. To the contrary, the record is clear that counsel was appointed for the limited purposes of custody, residence and visitation, none of which was before the trial court during the trial of financial matters or the subsequent motion hearing. Representations made to the trial court and in letters between the attorneys and counsel for the minor children reflect that all involved understood that Soboslai's retainer was limited to the issues of custody, residence and visitation.

We conclude that, under the circumstances of this case, because counsel's appointment was limited, it was proper for the trial court to have heard the motion affecting child support without the participation of counsel for the minor children. Consequently, we also conclude that we may properly hear this appeal from the granting of that motion.[4]

## II

The plaintiff claims that the trial court improperly modified the February 5, 1992 judgment in that the court was not presented with any evidence of a substantial change in circumstances.[5] We agree.

After the judgment dated February 5, 1992, the defendant filed his motion for reargument, reconsideration and to set aside judgment on February 20, 1992. The trial court heard the motion on September 16, 1992, and filed a memorandum of decision on October 7, 1992.[6]

---

[4] The legislature has not delineated, nor has the Supreme Court yet been presented with the opportunity to delineate, the obligations and limitations of the role of counsel for a minor child. *Knock* v. *Knock*, supra, 224 Conn. 791. We strongly echo the statement of the *Knock* court that representing a minor child creates practical problems for an attorney and that this important issue needs to be addressed. See also R. Berdon, "A Child's Right to Counsel in a Contested Custody Proceeding Resulting from a Termination of the Marriage," 50 Conn. B.J. 150 (1976).

[5] While the defendant argued at length on his own behalf at the hearing on the motion, the plaintiff asserts that the defendant was never sworn as a witness. Moreover, the plaintiff maintains that the defendant's argument at the motion hearing was a reiteration of the one he made at the trial.

[6] In its memorandum of decision, the trial court stated: "The defendant has moved to *modify* the following items in the judgment filed February 5, 1992. Child support of $346 per child (3) per week, alimony $250 per week and lump sum alimony $100,000 payable $20,000 per year (5) . . . . The plaintiff had requested support of $250 per week per child. However, the court using the prescribed guidelines arrived at the larger figure. Since it is evident that the defendant is presently burdened with some heavily encumbered real estate that is not easily saleable in today's market and the plaintiff requested the $250 per week per child for support, some *modification* is in order.

In response to the plaintiff's claim that the judgment was improperly modified, the defendant asserts that he never filed a motion for modification pursuant to General Statutes § 46b-86[7] and, therefore, did not have to show a substantial change in circumstances. He asserts that he filed a motion for reargument, reconsideration and to set aside the judgment and that the court's use of the word "modify" in its memorandum of decision on that motion is not determinative of the type of motion filed.[8]

"Reargument and reconsideration are granted and the judgment is amended as follows.

"The child support is *modified* to $250 per week per child for each of the three children. . . . The only other *modification* is that the lump sum alimony of $100,000 payable at the rate of $20,000 per year shall begin five years after the date of the decision, February 5, 1992 and be payable in five annual installments thereafter.

"The award of Unit 10 Condominium Le Plateau, Quebec, Canada, is deleted.

"The remainder of the judgment is not *modified.*" (Emphasis added.)

[7] General Statutes § 46b-86 provides in pertinent part: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

[8] The defendant also posits that because his motion was filed within the appeal period and because, if granted, it would have rendered the judgment ineffective, the motion was the equivalent of a Practice Book § 320 motion, not a motion to modify. Practice Book § 320 provides in pertinent part that "[m]otions in arrest of judgment . . . motions to set aside a verdict and motions for new trials . . . must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered; provided that for good cause the court may extend this time." Practice Book § 4009 provides in pertinent part that "if within the appeal period any motion is filed which, if granted, would render the judgment or decision ineffective, as, for example, a motion to open the judgment or to set aside the verdict or for judgment notwithstanding the verdict, the period of time for filing an appeal shall commence from the issuance of notice of the decision upon the motion . . . ."

The defendant's argument in this regard must fail because § 320 motions pertain only to jury trials, not bench trials. Motions in arrest of judgment, to set aside a verdict and for a new trial all require that the trier of fact

Regardless of how the defendant characterizes his motion, we must examine the practical effect of the trial court's ruling in order to determine its nature. Only then can we determine whether the ruling was proper. See *Diamond* v. *Diamond*, 32 Conn. App. 733, 741-42, 631 A.2d 1157 (1993). A modification is defined as "[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." Black's Law Dictionary (6th Ed. 1990).

Conversely, "the purpose of a reargument is . . . to demonstrate to the court 'that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts.' " *In re Hooker's Estate*, 173 Misc. 515, 517, 18 N.Y.S.2d 107 (1940).[9] A reconsideration "implies reexamination and possibly a different decision by the [court] which initially decided it." *Kerr-McGee Nuclear Corp.* v. *New Mexico Environmental Improvement Board*, 97 N.M. 88, 92,

be distinct from the trial court, in that each such motion seeks to attack the verdict that the trial judge has accepted. A § 320 motion is a prerequisite to full appellate review because it allows the reviewing court to have the benefit of the trial court's opinion on the legality of the verdict. In the absence of a § 320 motion, a judgment rendered after a jury trial will only be reviewed pursuant to the plain error standard. Because this case entailed a bench trial, the defendant's postjudgment motion cannot be characterized as a § 320 motion.

We are not unaware of *Dunham* v. *Dunham*, 217 Conn. 24, 28-29, 584 A.2d 445 (1991), in which the Supreme Court permitted only plain error review because the appellant failed to file either a § 320 motion or a § 326 motion to set aside the judgment following a civil contempt order. This decision appears to create for civil nonjury cases the requirement that a § 320 or § 326 motion must be filed in every case to secure appellate review. Such a requirement would run contrary to the rationale underlying § 320 motions. We read *Dunham* as limited to it facts (i.e., the issue was not raised). See 1 Connecticut Practice, Practice Book Annotated (1995 pocket part W. Moller & W. Horton) p. 210.

[9] Effective October 1, 1994, Practice Book § 204B allows for motions to reargue before the Superior Court.

637 P.2d 38 (1981). While a modification hearing entails the presentation of evidence of a substantial change in circumstances, a reconsideration hearing involves consideration of the trial evidence in light of outside factors such as new law, a miscalculation or a misapplication of the law. To set aside means "[t]o reverse, vacate, cancel, annul, or revoke a judgement . . . ." Black's Law Dictionary (6th Ed. 1990).

It is apparent from the transcript of the hearing held on September 16, 1992, that the parties presented and the trial court heard the motion as a motion to modify.[10]

---

[10] The following colloquies occurred between counsel for the defendant, the trial court and the defendant:

"The Court: What are you looking for, [counsel], exactly?

"[Counsel]: What I'd like to do is wipe out [the payments relating to alimony and lump sum alimony].

"The Court: Wipe out the alimony?

"[Counsel]: Well, she's got $100,000 in lump sum coming and periodic alimony, $250 a week.

"The Court: But—

"[Counsel]: You've given—

"The Court: It's $250 a week that you want to wipe out?

"[Counsel]: She's got $1000 a week in child support, and he's carrying the first and second mortgages. Now, I think that if he—if you reduce the child support, he would pay the mortgages. And then, if we deleted the other requirements, or at least made the life insurance optional so that if—that would reduce his payments to $1600 a week. He'd be able to manage that without falling into contempt.

\* \* \*

"[Counsel]: The final point, Your Honor, is that I would like to assert in connection with this proceeding is to—even if Your Honor isn't inclined to grant him any relief on the payments, Mr. Jaser has told me that he is in need—that he feels constrained and unable to make the payments without moving pieces of real estate.

\* \* \*

"[The Defendant]: What I'm concerned about—there's—we're in a period of fluctuation. Values fluctuate, and things happen in people's lives. In my life, shortly after His Honor's decision, I had an embezzlement from a partner of mine of $250,000. It created a horrendous situation, but I can't explain that because its postjudgment. But it happens in our lifetime. It's created problems with me with the bank. . . . My problem right now is cash flow. If His Honor would give me some relief now in the payments up front—

The trial court's memorandum of decision further clarifies that the court regarded its ruling as a modification. Therein, the court states its understanding that "[t]he defendant . . . moved to modify" the judgment. The court then concludes that "some modification is in order" and orders what it terms to be "modifications" of the judgment. See footnote 6.

Moreover, neither party, at the time of the hearing or when the memorandum of decision was received, sought to bring to the attention of the court that what was sought was other than a modification of the judgment. Our rules of practice are designed to assure, and fair play requires, that such details be brought to the attention of the court expeditiously. *Donaghue* v. *Gaffy*, 53 Conn. 43, 52, 2 A. 397 (1885). Had the trial court been advised by the parties that there was a question concerning the motion sought to be heard and the decision received, it clearly could have remedied any deficiency under our rules in the trial court. The appeal process should not be utilized for this purpose. *Fuessenich* v. *DiNardo*, 195 Conn. 144, 149, 487 A.2d 514 (1985).

Having determined that the trial court granted a modification, we must next consider whether the court found that a substantial change of circumstances existed. "The burden is on the party seeking modification to show the existence of a substantial change in circumstances." *Emerick* v. *Emerick*, supra, 28 Conn. App. 802. In this case, however, the trial court made no finding of a substantial change in circumstances. The modification of the February 5, 1992 judgment was improper, therefore, because the required threshold showing of a substantial change in circum-

because it's very difficult to make—to put them on the back end, maybe, when years from now, where I can pay the difference, I—let me work out of this thing. But I need some relief."

stances was not met by the party seeking the modification.[11]

This ruling severely impacts the trial court's original judgment. The singular implication to be drawn from the trial court's willingness to modify the judgment is that the judgment was based on an incomplete analysis of the pertinent facts. *Bartley* v. *Bartley*, 27 Conn. App. 195, 198, 604 A.2d 1343 (1992). A judgment in an action for a dissolution of marriage is a carefully crafted mosaic. *Tremaine* v. *Tremaine*, 34 Conn. App. 785, 792, 643 A.2d 1291 (1994). The modification in this case affected child support, lump sum alimony and property rights. The symmetry and harmony of the tiles in the original design were so disturbed by the modification that we must reverse the original judgment and order a new trial.

The judgment is reversed as to all orders except that dissolving the parties' marriage and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[11] Moreover, the court's modification orders included a modification of the award of lump sum alimony. Lump sum alimony "is a final judgment not modifiable by the court even if there is a change in circumstances. *Turgeon* v. *Turgeon*, 190 Conn. 269, 282, 460 A.2d 1260 (1983); *Miller* v. *Miller*, 16 Conn. App. 412, 416, 547 A.2d 922, cert. denied, 209 Conn. 823, 551 A.2d 430 (1988)." *Barnett* v. *Barnett*, 26 Conn. App. 355, 357, 600 A.2d 1055 (1992). The action of the trial court in this respect was therefore also improper.