# CITY OF BRIDGEPORT *v.* TRIPLE 9 OF BROAD STREET, INC., ET AL.
## (AC 24854)

Dranginis, Bishop and Mihalakos, Js.

Argued November 29, 2004—officially released March 1, 2005

*Robert A. Maniscalco*, with whom, on the brief, was *Tanis Reid*, for the appellant (substitute defendant Republic Credit Corporation I).

*Russell D. Liskov*, associate city attorney, for the appellee (plaintiff).

*Opinion*

BISHOP, J. In this eminent domain matter, the substitute defendant Republic Credit Corporation I (Republic) appeals, challenging the trial court's decision denying its postjudgment "motion for determination of claims and priorities." We reverse the decision of the trial court.

The following facts and procedural history are relevant to our consideration of the issue on appeal. In 1992, the defendant Triple 9 of Broad Street, Inc. (Triple 9), purchased property at 999 Broad Street in downtown Bridgeport at auction from the Federal Deposit Insurance Corporation (FDIC) for $3,250,000. Although the purchase was initially financed by a mortgage loan from the FDIC in the amount of $2,437,500, this mortgage was acquired by State Street Bank and Trust Company, as Trustee (State Street), and later assigned to Republic.

On June 12, 1998, in conjunction with its condemnation of the property, the plaintiff, the city of Bridgeport (city), filed a "certificate of taking" and "statement of compensation," and deposited the sum of $1,120,000 with the clerk of the court as just compensation. In conjunction with these filings, the city listed Triple 9, State Street, and the defendants Chase Manhattan Bank, N.A., the water pollution control authority of the city of Bridgeport (authority) and the tax collector of the city of Bridgeport (tax collector) as having record interest in the property. After State Street and Triple 9 appealed to the trial court seeking a review of the amount of compensation, the matter was assigned pursuant to statute for a hearing before a committee of three trial referees.[1] Neither the authority nor the tax collector appeared or participated in the proceedings.

On February 14, 2002, the three judge panel issued its memorandum of decision. In pertinent part, the memorandum stated: "The court further finds that $1,120,000 was deposited on June 12, 1998, by the appellee, the city of Bridgeport, with the clerk of the Superior Court for the use of the persons entitled thereto on account of the damages to be awarded and that the deficiency between the fair market value of the property on the date of taking and the amount so deposited is

---

[1] General Statutes § 52-434a provides in relevant part: "(a) In addition to the powers and jurisdiction granted to state referees under the provisions of section 52-434, a . . . judge . . . who has ceased to hold office as justice or judge because of having retired and who has become a state referee and has been designated as a trial referee . . . shall have and may exercise, with respect to any civil matter referred by the Chief Court Administrator, the same powers and jurisdiction as does a judge of the court from which the proceedings were referred.

"(b) In condemnation proceedings in which the assessment fixed by the condemning authority exceeds the sum of two hundred thousand dollars the court may, at the request of either party, or on its own motion, refer the proceedings to the Chief Court Administrator for referral to a committee of three such referees who, sitting together, shall hear and decide the matter. . . ."

$630,000. The court also finds that under all the circumstances, a fair, just and reasonable rate of interest on the amount of the difference between the amount of damages paid by the city and the amount determined by the court is 4 percent from the date of taking. In addition, the court awards appraisal fees of $5000 each to Robert Von Ancken and Eric Michel for their appraisal services, reports and testimony in court, entitling the appellants to that amount as part of their costs."

Following the court's February 14, 2002 memorandum of decision, Republic filed a "motion for determination of claims and priorities" on April 26, 2002. Through this pleading, Republic asked the court to determine "the amounts owed to, and the order of priorities of, the several defendants." The motion was evidently precipitated by events that took place between the date of the memorandum of decision and the date of the motion. Following the issuance of the court's decision, counsel for Republic and counsel for the city agreed that rather than deposit the required additional sum with the clerk of the court, the city would forward funds directly to Republic. From Republic's perspective, the total amount the city should have remitted was $737,440, representing the difference between the fair market value and the amount initially deposited by the city plus interest at the rate of 4 percent. The city instead deducted the sum of $126,941.95 for real estate taxes due on the property, remitting the balance to Republic.

In conjunction with the filing of its postjudgment motion, Republic claimed that the city had erroneously made a deduction for taxes from the amount forwarded to Republic and that Republic not only owed no taxes on the property, but was, in fact, due a tax refund for overpayment. In response, the city claimed that it was entitled to issue a tax warrant against the proceeds of the condemnation award for unpaid taxes. The city

further claimed that it had been incumbent on the condemnees to present any issues regarding taxes on the property as part of its claim for damages during the proceedings before the three judge panel and, having failed to do so, Republic was utilizing a postjudgment motion improperly to assert an element of damages that it should have pressed during the initial hearing.

In response to Republic's motion, the court, *Stevens, J.*, issued a memorandum of decision filed June 5, 2003, in which it concluded that Republic's motion was, in fact, a motion to open the judgment. The court opined: "The motion should be treated as a motion to open the judgment and should be referred to the panel because the motion implicates the evidence considered and the damages awarded by the panel." In referring the matter back to the hearing panel, the court also noted: "The city apparently concedes that it apportions taxes contrary to local custom and cites *Ives* v. *Addison*, 155 Conn. 335, 232 A.2d 311 (1967), to support its actions. General Statutes § 48-14a appears, however, to have been enacted to remedy the effect of *Ives* and, in that sense, the statute is remedial in nature. Thus, the question is whether under these circumstances the interests of justice warrant a review or reconsideration of the judgment in order to address the apportionment of the taxes pursuant to § 48-14a, particularly when an appellant claims that the city would receive a windfall absent such review."

In response to the court's second referral of the matter, the three judge panel concluded that it did not have the authority to treat Republic's motion for determination of claims and priorities as a motion to open and, on that basis, denied Republic's motion. This appeal followed.

At the outset, we note our standard of review for assessing a trial court's decision on a motion to open

a judgment. "When a motion to open is timely filed, our review is limited to whether the court has acted unreasonably or has abused its discretion. . . . When the motion to open is not timely and the time limitation has not been waived, however, the trial court lacks jurisdiction to open the judgment." (Internal quotation marks omitted.) *Johnson* v. *Atlantic Health Services, P.C.*, 83 Conn. App. 268, 273, 849 A.2d 853 (2004). Because, in this instance, the motion was filed within four months of the date of judgment, our review of the court's decision would normally be limited to the question of whether the court acted unreasonably or abused its discretion. See id.; see also Practice Book § 17-4. The three judge panel, however, did not act on Republic's motion. Rather, it decided that it lacked the legal authority to treat the motion as one to open the judgment. Because that determination was a conclusion of law, our review on appeal is plenary. See *Employers Reinsurance Corp.* v. *Muro*, 86 Conn. App. 551, 555, 861 A.2d 1216 (2004), cert. denied, 273 Conn. 907, 868 A.2d 747 (2005). The determinative question we must answer is whether the three judge panel correctly concluded that it did not have the legal authority to treat Republic's pleading as a motion to open the judgment.

Our analysis of this issue is multitiered. First, we consider whether the trial court's characterization of Republic's motion was binding on the three judge panel. If we answer that question in the negative, we next consider whether the motion could fairly be characterized as a motion to open the judgment. Last, assuming that we answer the second question in the affirmative, we assess whether the three judge panel correctly determined that it did not have the authority to treat Republic's filing as a motion to open.

As to the first part of our analysis, we note, again, that when a condemnation appeal is referred to a state referee or a panel of state referees, the retired judges or justices who sit as trial referees exercise the "same

powers and jurisdiction as does a judge of the court from which the proceedings were referred." General Statutes § 52-434a (a). Thus, this part of the question requires us to consider whether one judge is bound by the decisions of another judge in the same matter. Our inquiry in this regard requires us to consider the law of the case doctrine. "The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge." (Internal quotation marks omitted.) *Bowman* v. *Jack's Auto Sales*, 54 Conn. App. 289, 293, 734 A.2d 1036 (1999). The practice, however, of one judge adopting the opinion of another judge made previously in the same matter is not mandatory. "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (Internal quotation marks omitted.) *Breen* v. *Phelps*, 186 Conn. 86, 98, 439 A.2d 1066 (1982). "According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Internal quotation marks omitted.) Id., 98–99. Thus, notwithstanding Judge Stevens' characterization of Republic's filing as a motion to open, the three judge panel was entitled to make its own determination as to the nature of the motion referred to it.

We next turn to the question of whether Republic's motion could fairly be characterized as a motion to open. We agree with Judge Stevens that the title of the

motion is not conclusive. Thus, for example and as noted by Judge Stevens, a motion to reargue properly may be treated as a motion for modification. See *Jaser* v. *Jaser*, 37 Conn. App. 194, 201–203, 655 A.2d 790 (1995). Our decisional guidance informs us that in responding to a postjudgment motion, a trial court may look to the relief requested in the motion to determine its precise nature. This court has opined: "Even though the plaintiffs' motion was captioned motion for clarification, we look to the substance of the claim rather than the form . . . ." (Citation omitted; internal quotation marks omitted.) *Bower* v. *D'Onfro*, 45 Conn. App. 543, 547–48, 696 A.2d 1285 (1997), quoting *Whalen* v. *Ives*, 37 Conn. App. 7, 16, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995). "We do not look to the precise relief requested in the motion to determine the propriety of the trial court's action. . . . Instead, we must determine whether the relief requested was of the same general type as that awarded and whether the request was sufficient to apprise the [nonmovant] of the purpose of the motion and of the kind of relief that might be ordered by the court." (Citation omitted.) *Clement* v. *Clement*, 34 Conn. App. 641, 646–47, 643 A.2d 874 (1994). In this case, although the motion was not denominated as a motion to open, a reasonable understanding of the relief requested suggests that Republic sought an order that it not be liable for the payment of the real estate taxes seized by the city and that the full amount of the court's award be paid to Republic. Because this request implicates the authority of the court to issue additional substantive orders in the matter, the motion can fairly be understood as one to open the judgment.

Having determined that the motion filed by Republic could fairly be characterized as a motion to open, we are left with the question of whether the three judge panel had the authority to act on it. In determining that

it did not have the authority to treat Republic's motion as one to open the judgment, the panel appears to have read language found in *Rome* v. *Album*, 73 Conn. App. 103, 111, 807 A.2d 1017 (2002), as limiting the court's authority to open its judgments generally. In *Rome*, this court stated that in a marital dissolution matter, a trial court had the authority to treat a postjudgment motion to clarify its judgment as a motion to open when the motion had been filed within two months of the judgment, the motion put the adverse party on notice as to the relief sought, the motion sought to correct an error of omission and the findings contained in the judgment clearly expressed the court's intent regarding the property that was the subject of the motion. Id., 112. In arriving at this formulation, the court in *Rome* was concerned with the tension between General Statutes § 46b-81[2] regarding the nonmodifiability of property orders in a marital dissolution judgment and the provisions of General Statutes § 52-212a[3] regarding the opening of judgments generally. *Rome* v. *Album*, supra, 110. Additionally, in making its determination, the court recognized the limited applicability of its ruling by stating explicitly: "The issue of the court's authority depends largely on the facts of the present case." Id. Thus, the reasons found in *Rome* for the court's authority to treat a motion to clarify a marital dissolution as a motion to open the judgment should not be viewed as a limitation on the court's authority to give practical effect to a timely filed postjudgment motion. Rather, the court, in *Rome*, solely found that the particular motion filed in

[2] General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ."

[3] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

that instance did not run afoul of the proscription against postjudgment modification of property orders as set forth in § 46b-81.

This narrow construction of *Rome* is consistent with our more general jurisprudence regarding the authority of the court over its judgments. It is familiar law that a court has the inherent authority to open, correct or modify its judgments. See *Nastro* v. *D'Onofrio*, 76 Conn. App. 814, 821, 822 A.2d 286 (2003). The provisions of § 52-212a do not operate to strip the court of its jurisdiction over its judgments, but merely operate to limit the time period in which a court may exercise its substantive authority to adjudicate the merits of a case. *East Haven Builders Supply, Inc.* v. *Fanton*, 80 Conn. App. 734, 741, 837 A.2d 866 (2004). Given the relief requested by Republic in its postjudgment motion, and in light of the court's continuing jurisdiction over its judgments and its authority to act substantively to open its judgments within four months of rendition, the court in this instance had the authority to treat Republic's postjudgment pleading as a motion to open the judgment.

The decision denying the motion to open is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.